UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:12-cv-00212-MOC-DSC

| | |
|---|---|
| **ERNIE S. BALDWIN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | MEMORANDUM OF DECISION |
| ) | and ORDER |
| ) | |
| **DUKE ENERGY BUSINESS SERVICES LLC, et al.,** ) | |
| ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the court on defendants' Motion for Summary Judgment (#57) and Motion for Sanctions (#60). Also before the court are defendant's Memorandum in Support of Summary Judgment (#57-1), defendants' exhibits filed in support of summary judgment (#57-2 through #57-38, #58-1 through #58-42, & #59-1 through #59-71), plaintiff's Memorandum in Opposition to Summary Judgment (#68) and exhibits (#68-1), plaintiff's Memorandum in Opposition to Sanctions (#63) and supporting exhibits (#63-1 and #63-2), defendants' Reply to Response to Motion for Sanctions (#67) and supporting exhibits (#67-1 and #67-2), and defendants' Reply to Response to Motion for Summary Judgment (#71) and supporting exhibits (#71-1 through #71-10) as well as excerpts from plaintiff's medical records (#72), which are sealed. On November 6, 2013, a non-evidentiary hearing was held and the court took the motions under advisement. Having fully considered the written and oral arguments as well as the written materials and exhibits, the court will deny the request for sanctions without prejudice and, finding that no genuine issue of material fact remains for trial, grant the Motion for Summary Judgment and dismiss this action.

# FINDINGS and CONCLUSIONS

## I.     Overview

While plaintiff has raised a number of employment discrimination claims based on religion, perceived disability, and the taking of protected medical leave, his Complaint boils down to a claim that his employment was terminated in retaliation for engaging in the protected conduct of filing an administrative complaint concerning acts of discrimination he perceived in the workplace. As discussed more thoroughly below, such claim fails because plaintiff cannot show that retaliation for engaging in protected activity was the "but for" cause of his termination. Defendants have shown that they terminated plaintiff's employment in August 2010 for insubordination when he refused to return to work after being given three opportunities to do so. Plaintiff's argument that he refused to return based on advice of counsel is not only insufficient to show pretext, it is wholly unsupported by the attorney who he says told him to stay out of work.

As to defendants' Motions for Sanctions, it would *appear* at this point that plaintiff, despite being made aware of the legal requirement of safeguarding electronic information based on receiving litigation hold letters as well as being aware of his employers policies regarding company issued computers, wiped the hard drive of his computer before returning it to his employer, thereby frustrating the orderly progress of this litigation and violating Rule 26, Federal Rules of Civil Procedure. While such *appears* to be the case, a *conclusion* sufficient to award monetary or other pre-trial sanction would require the court to hear and consider the credibility of all persons in the chain of custody of such laptop. If this matter were to go to trial, such credibility determination would be for the jury to consider with an appropriate spoliation

instruction. As it now stands, the court is dismissing this case at summary judgment, and a definitive resolution of the Motion for Sanctions is unnecessary at this point. The Motion for Sanctions will, therefore, be denied without prejudice.

## II. Factual Background

### A. Plaintiff's Employment and Termination

Plaintiff was hired by defendant Duke Energy Business Services LLC in 2005 as a "Senior Application Analyst" serving in defendants' Power Delivery Information Technology Department ("Power Delivery IT"). In March 2009, plaintiff transferred to the Nuclear Energy, Safety and Protection Applications Department ("Nuclear IT"), performing the same job as a Senior Application Analyst. His supervisor in Nuclear IT was Barbara Rozzelle and he remained in such department under such supervisor until he was discharged in August 2010.

It is undisputed that even prior to moving over to Nuclear IT, plaintiff had performance issues during his years in Power Delivery IT. In particular, plaintiff had problems coming into the office and being available for office discussions, taking initiative, being proactive and "doing things just because someone asked him to without thinking them through or checking with management to see if it needs to be done." Pl. Dep. Ex. 10; Pl. Dep. 180:20-22.

When he moved over to Nuclear IT, Ms. Rozzelle noted similar performance issues and attempted to correct those issues without success. As in Power Delivery IT, plaintiff had difficulties in time and communications. Rozzelle Dep. 97:10-99:9, 219:3-220:6. Such problems led to Ms. Rozzelle concluding that it was a mistake to have allowed plaintiff to participate in Duke's work at home program. Such conclusion was based on observed deficiencies, which included an inability to work regularly-scheduled hours. Rozzelle Decl. ¶¶13-14, 18; Rozzelle Dep. 219:21-22; see also Johnston Dep. 22:18-22; Rozzelle Decl. Ex. 2.

In May 2009, Ms. Rozzelle consulted with her then-supervisor Matthew Peterson regarding plaintiff's performance deficiencies and both agreed that she needed to take steps to address those issues. Rozzelle Decl. ¶19; see also Rozzelle Decl. Ex. 2. On May 14, 2009, Ms. Rozzelle met with plaintiff and identified areas of concern, including, but not limited to, that he had problems focusing and committing to work, adhering to a regular schedule during work hours and communicating to her his unavailability during regularly-scheduled hours. Pl. Dep. Ex. 11; Pl. Dep. 198:18-201:6-15; Rozzelle Dep. 218:6-12, 239:5-12; Rozzelle Decl. ¶20, Ex. 1. Rozzelle instructed plaintiff to provide her with a weekly status update and to return to the office to work rather than continuing to work from home. Despite such instructions, plaintiff continued to work from home in June 2009 without her approval. On June 17, Ms. Rozzelle again met with plaintiff, reiterated her concerns, and provided plaintiff with a copy of the company's "Working Expectations." After this meeting, plaintiff informed Mr. Peterson that he "felt like the best thing for me to do was leave." Pl. Dep. 349:3-18. Despite such second round meeting, Ms. Rozzelle reported that she still had problems with plaintiff's work status and communications. Rozzelle Decl. ¶35. In addition, new problems arose, including failure to secure approval before beginning work on new projects, providing work to customers outside the scope of his job, and failing to update the HR database with his work schedule. Rozzelle Decl. ¶¶5-9, 36, & 37.

In October 2009, plaintiff failed to provide Ms. Rozzelle with information about his annual accomplishments as well as references to other individuals whose feedback he would like to be included in his annual performance appraisal. Rozzelle Decl. ¶¶4, 49, &50. Thus, she solicited comments from plaintiff's co-workers and customers, and included both positive and negative feedback in the annual appraisal. In that appraisal, plaintiff was graded as "partially meets" expectations.

In January 2010, plaintiff received the rating during a meeting with Ms. Rozzelle, and informed her that he had issues with the contents of the report. As allowed, plaintiff provided a rebuttal to the report later that month, but never claimed that the rating was discriminatory or retaliatory. Pl. Dep. 317-318.

On January 19, 2010, the day after submitting his rebuttal, plaintiff took approved FMLA leave, which was anticipated to last until March 19, 2010. Pl. Dep. Ex. 35. During such leave, Ms. Rozzelle and Mr. Johnston considered plaintiff's rebuttal, ultimately removing a reference to plaintiff being the lead on a certain project and changing the performance review to "fully meets expectations" as to customer service. Plaintiff was informed of such when he returned from FMLA leave. Rozzelle Decl. ¶59.

After plaintiff's FMLA leave expired, Ms. Rozzelle expected plaintiff to return to work at the office on March 22, 2010. She subsequently learned that plaintiff had submitted his Return to Work form to defendants' leave administrator and that such form contained a recommendation that defendant work from home until April 30, 2010. Such recommendation did not, however, explain why plaintiff was unable to come into the office. Defendants, however, honored such request and allowed plaintiff to work from home through the end of April 2010. During such period of sanctioned working from home, plaintiff was presented with an updated "Working Expectations," which included touching base with Ms. Rozzelle daily to update her on his work progress and to ensure that he working as scheduled. Rozzelle Decl. ¶¶ 72-73.

Upon a request from plaintiff's physician, defendants further extended plaintiff's ability to work from home through June 24, 2010, based on a need to sit for less than 30 minutes at a time. Pl. Dep. Exs. 38, 40. Beginning May 4, 2010, Mr. Johnston sought information from plaintiff concerning his sitting restriction so that defendants could determine what, if anything,

could be done to enable plaintiff to work in the office. Johnston Decl. ¶¶35-37. Specifically, plaintiff was asked to provide pictures of office furniture he needed to accommodate his medical needs and to sign a consent form so that a company doctor could discuss with plaintiff's doctor accommodating plaintiff's needs. Such information and consent were never provided. Johnston Decl. ¶37. Three weeks after plaintiff's medical certification expired, plaintiff sought a further extension of his work-from-home privilege through August 19, 2010. Citing problems with plaintiffs performance and need for supervision, defendants declined this request and informed plaintiff of their ability to assist with his needs, and instructed him to report to work in the office. Robinson Dep. 45-46.

On August 2, 2010, defendants' Director of Employee Relations spoke with plaintiff concerning his return to work and told him that his need to not be seated more than 30 minutes would be accommodated when in the office and that he was expected to return to work August 4, 2010. Patton Decl. ¶11. Such expectation was then restated in an email sent to plaintiff; however, plaintiff emailed back that his understanding of that conversation was different and that the defer to his attorney and defendants' in-house counsel as to what to do next. Pl. Dep. Ex. The Director of Employee Relations then replied to plaintiff that he was expected to report to the office as instructed, to which no reply was received.

It is undisputed that plaintiff failed to return to work on August 4, 2010, based on his own volition. Pl. Dep. 385:24-388:23, 391:14-19; Pl. Dep. Ex. 44; Maloney Dep. Ex. 2; Robinson Dep. 82:23-83:9. Defendants in-house counsel then contacted plaintiff's attorney, Meg Maloney, and informed her that defendants expected plaintiff to return to the office August 6, 2010. While plaintiff testified that he was not informed by his attorney of the August 6, 2010, return to work requirement, an email was sent by his attorney that day informing him of such

6

expectation, to which he replied.  Maloney Dep. Ex. 2.   Plaintiff did not report to the office on August 6, 2010, as instructed.  His employment was terminated August 10, 2010.

Plaintiff *admitted* during his deposition that he ultimately refused to return to the office to work – not because of a medical reason – but because he was deferring to his then-attorney, who he admits never told him not to report to work, and defendants' in-house counsel, who told plaintiff's former-counsel that the Company expected him to report to work.  Pl. Dep. 389-395; Maloney Dep. Ex. 2.

In responding to the Motion for Summary Judgment, plaintiff maintained that his termination in August 2010 for insubordination was mere pretext for discrimination or retaliation.  Despite his own admission, plaintiff continued to maintain even at oral argument that his reason for not returning to work in August 2010 was advice of his former attorney, Meg Maloney.  Such argument finds no support in the record.

### B. Plaintiff's Complaints of Discrimination

Although defendants have submitted properly authenticated exhibits and Baptismal records which would indicate that plaintiff was a Baptist, plaintiff contends that he is a member of the Jewish faith despite being unable to produce any objective evidence to support such contention.  The court has, in an abundance of caution, accepted plaintiff's contention that he is Jewish for the limited purpose of this review.

Plaintiff contends that on May 29, 2009, he and Ms. Rozzelle attended a company sponsored charitable event at Legal Aid in Gaston County.  He contends that Ms. Rozzelle learned that he was Jewish during this event when:

> There was -- someone made the comment that God likes Jews that help others. And someone else made the comment that God loves Jews that make money when they help others. It's a old Jewish joke.· And I think -- I took no offense to it and I thought nothing else about it.

7

Pl. Dep. at 259. Plaintiff contends that such comments were made in front of him and Ms. Rozzelle in the course of compliments being made by Legal Aid employees concerning the volunteer work plaintiff had done. Plaintiff testified that at no time after that event did Ms. Rozzelle inquire as to any religious beliefs he had. Id. at 262-263.

In May 2010, nearly a year after the Legal Aid event and immediately after Mr. Johnston asked plaintiff to clarify the medical condition which required being allowed to work at home beyond April 2010, plaintiff filed a grievance through defendants' "Recourse Process" ("administrative complaint"). In this complaint, plaintiff claimed that Ms. Rozzelle had given him a lower evaluation because he was Jewish. Notably, plaintiff did not contend in the administrative complaint that the lower rating was due to his taking medical leave or being perceived as suffering from a disability. He stated that because of such religious belief, he believed Ms. Rozzelle had given him the poor rating and talked negatively about him to his co-workers and supervisors.

Defendants considered such administrative complaint in two tiers: first, plaintiff's claim of an unsupported performance appraisal was evaluated; and second, plaintiff's claim of anti-Semitism was considered. Each tier was evaluated by teams lead by different investigators, and both teams concluded plaintiff's claims were not meritorious. Robinson Decl. ¶17; Reagan Decl. ¶ 22 & Exs. 2, 4, 5. On August 10, 2010, the overall investigator, Mr. Reagan, informed plaintiff that his administrative complaint could not be substantiated. Pl. Dep. Ex. 49. On August 16, 2010, plaintiff was fired for insubordination based on failing to report to the office for work.

### III. Applicable Standard

As to defendants' Motion for Summary Judgment, Rule 56(a), Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The rule goes on to provide procedures for plaintiff to use in responding to a Motion for Summary Judgment:

> **(c) Procedures.**
> (**1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c). On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

## IV. Discussion

As mentioned initially, plaintiff's claims of employment discrimination fall into three categories: discrimination based on religion; discrimination based on a perceived disability; and retaliation based on engaging in protected activity in filing the internal administrative complaint. Each claim will considered *seriatim*.

### A. Discrimination Based on Religion

Plaintiff first contends that his performance appraisal and ultimate termination were the direct result of Ms. Rozzelle discovering that he was Jewish. Accepting plaintiff's contentions that he was in fact Jewish and that Ms. Rozzelle knew he was Jewish, plaintiff has presented nothing beyond his mere speculation or belief that his religion had anything to do with his performance appraisal or his ultimate termination.

Assuming plaintiff has alleged membership in a protected class, the second inquiry is whether plaintiff has pled facts sufficient to raise a reasonable inference of discrimination. To do so, plaintiff must now come forward with evidence that could establish a prima facie case. Assuming that the first criteria is met, to create a presumption of religious discrimination, plaintiff must now come forward with evidence that (1) he suffered an adverse employment action, (2) he was meeting defendants' legitimate performance expectations, and (3) either that similarly-situated individuals who are not Jewish were treated differently, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. Taylor v. Virginia Union Univ., 193 F.3d 219, 230 (4th Cir. 1999); see also Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004), cert. denied, 543 U.S. 1132 (2005).

While plaintiff has presented evidence that he *perceived* that Ms. Rozzelle heard the anti-Semitic joke allegedly told by some unidentified Legal Aid employee in 2009, and that he

*believes* that from that joke Ms. Rozzelle concluded that he was Jewish, there is absolutely no evidence that Ms. Rozzelle either heard the joke or knew plaintiff was Jewish. The only admissible evidence as to what Ms. Rozzelle knew come from Ms. Rozzelle, who avers that she never heard that plaintniff was Jewish at the Legal Aid event and did not learn of his claim to be Jewish until after she was no longer his direct supervisor. See Rozzelle Decl. at ¶¶ 26, 27 & 92. Indeed, plaintiff admitted during his deposition that his speculation is unsupported as he admitted that he was not specifically referenced in the joke and that he did not even know if Ms. Rozzelle heard the joke. Pl. Dep. 259:19-260:7, 261:18-21, 262:18-263:15, 265:12-17.

There being absolutely no evidence that Ms. Rozzelle or any decision maker knew that plaintiff was Jewish, his Title VII claim based on religious discrimination fails as there is no genuine issue of material fact for resolution by the jury.

### B. Discrimination Based on Perceived Disability

In the context of a termination of employment, a plaintiff must come forward with evidence that would support a finding in his favor on each of the four elements that establish a prima facie case of disability discrimination under the Americans with Disabilities Act. A cause of action for discrimination in employment based upon disability requires allegations that plaintiff: (1) is an individual with a disability (or perceived as such a person); (2) is otherwise qualified to perform job requirements, with or without reasonable accommodation; and (3) was discharged solely by reason of a disability. Doe v. University of Maryland Medical Sys. Corp., 50 F.3d 1261, 1265 (4th Cir.1995); 42 U.S.C. § 12112(a).

Here, plaintiff does not plausibly contend that he was disabled; rather, he appears to contend that his employer perceived him as being disabled. An individual meets the requirement of "being regarded as having [a disability]" if he can establish that he has been subjected to an

action prohibited by the ADA because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. 42 U.S.C. § 12102(3)(A). Simple knowledge that a person suffers from an impairment will not suffice to show that the employer regarded such person as having a disability. Brewington v. Getrag Corp., 2011 U.S. Dist. LEXIS 118177 at *10 (W.D.N.C. Oct. 12, 2011).

Taking all the evidence in a light most favorable to plaintiff, it is undisputed that they considered plaintiff's inability to sit for more than 30 minutes a temporary condition. Indeed, even the Return to Work form requested an accommodation of a limited duration, which defendants granted and then extended upon plaintiff's request. The 2008 amendments to the ADA expressly state that the "regarded as" definition of disability "shall not apply to impairments that are transitory [(i.e., an actual or expected duration of six months or less)] and minor." 42 U.S.C. § 12102(3)(B). Indeed, the only admissible evidence as to how the employer regarded plaintiff's condition comes from Mr. Robinson and Mr. Martin. It was their opinion that plaintiff's condition was short term. Robinson Decl. ¶30; Robinson Dep. 46:11-25; Martin Decl. ¶12.

Plaintiff has presented absolutely no evidence that his employer in any way regarded him as disabled within the meaning of the ADA. His unsupported belief, without more, that defendants perceived him to be disabled in 2009 and 2010 because of cancer that he had 30 years ago or because of a temporary "medical condition" that required a sit/stand option at work does not satisfy the requirements of the ADA. Thus, his ADA claim fails at summary judgment.

### C. Retaliation Claim

#### 1. Retaliation for Filing an Administrative Complaint

While having raised other claims, it appears that plaintiff's core claim is not that he was

discriminated against based on his religion or that his employer perceived him as suffering from a disability; rather, plaintiff's overriding claim is that after he engaged in protected activity in May 2010 by filing an internal complaint of discrimination, he was discharged in August 2010 for engaging in such protected activity. This is plaintiff's central claim as plaintiff has shown that approximately three months elapsed between submitting the administrative complaint and his termination. The question for the court is whether such showing is sufficient to allow such claim to move forward to trial.

To establish a prima facie case of retaliation, plaintiff must establish: (1) that he engaged in a protected activity; (2) that defendants thereafter acted adversely against him; and (3) that the protected activity was causally connected to the adverse action. Holland v. Wash. Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). Here, the first two elements are clearly met and the only remaining issue in establishing a prima facie case is whether there is evidence that the two events were causally connected.

The court has given close consideration to the temporal proximity of plaintiff's administrative complaint and his termination. While in some circumstances the timing of such events could give rise to an inference of discrimination, the court finds that a time span of nearly three months weakens any such inference. King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003). Further, plaintiff's intervening insubordination in refusing to return to work from the office rather than home would negate any such inference. Safari v. Cooper Wiring Devises, Inc., 2012 U.S. Dist. LEXIS 52036, at *15-16 (W.D.N.C. Apr. 13, 2012).

Clearly, defendants have shown that its directive for plaintiff to return to work from the office was based on a determination that it could accommodate his need for a sit/stand option. Indeed, it is undisputed that prior to requiring plaintiff to return to the office, defendants asked

plaintiff to provide pictures of office furniture he would need to work from the office and to provide a medical waiver so that defendants' physician could talk with plaintiff's physician as to his needs.

Further, during an initial interview in connection with the administrative complaint, plaintiff complained that Mr. Martin in Human Resources had inadvertently copied him on a reply sent to Mr. Johnston's May 10, 2010 email to him, which requested that plaintiff provide additional medical information concerning his sitting requirement. In that reply, Mr. Martin told Mr. Johnston to "keep the heat on" plaintiff to turn in his medical information, which plaintiff believed was evidence of retaliation for his taking a leave of absence. After receiving such information from plaintiff regarding Mr. Martin's comment, defendants removed Mr. Martin from the investigation and decision-making processes regarding plaintiff. Patton Dep. 20:16-21:4; Patton Decl. ¶¶5-6, 21; see also Martin Decl. ¶9. It appears that defendants took such administrative complaint seriously, conducted a facially impartial two-tiered investigation, and only after such investigation was complete did they conclude that the claim lacked merit.

In determining whether plaintiff has presented evidence that would satisfy his burden of showing a causal connection, the Supreme Court recently held that when making a retaliation claim, plaintiff must be able to "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517, 2534 (2013). At summary judgment, the "but-for" standard requires plaintiff to come forward with evidence that he would not have been terminated absent filing the administrative complaint with his employer. Id. Not only does plaintiff fail to present any evidence that would satisfy that burden, the evidence of record is antithetical to such contention as it establishes that plaintiff was fired after being instructed by defendants to return to work

three times and being given two dates on which to return. Thus, plaintiff cannot show that his engaging in protected activity is the "but for" cause of his termination; rather, it appears that "but for" not returning to work, plaintiff would not have been fired on August 10, 2010. Plaintiff's contentions that he was either unaware of the requirement or was told by his attorney not to return are simply unsupported as the undisputed evidence of record shows that he knew of such requirement and that his attorney never told him to disobey the orders of his employer.

Having failed to present evidence that retaliation for engaging in the protected activity of filing an internal complaint of discrimination was the "but-for" cause of his termination, this claim will be dismissed.

### 2. Retaliation for Taking FMLA Leave

During his deposition, plaintiff also contended that he was subjected to adverse employment action because he took FMLA leave. Plaintiff contends that the less than positive performance appraisal and the heightened scrutiny of his work and the requirement of daily meetings resulted from taking FMLA leave. Pl. Dep. 102:20-104:15. As discussed above, this claim also failed because plaintiff has been unable to show that taking FMLA leave was the "but-for" cause of such supposed adverse employment actions.

Plaintiff's performance issues, however, predate his request for and taking of FMLA leave. As discussed above, his problems with communications and accounting for his time began in March 2009 when he transferred to the Nuclear IT department. Plaintiff did not request and inform Ms. Rozzelle until October 2009 of his intent to take FMLA leave. Pl. Dep. 53:13-16, 209:3-210:8, 466:16-467:15; Rozzelle Decl. Where an employee's inadequate work performance predates the protected activity of taking FMLA leave, that employee cannot establish a causal link between the protected activity and the adverse employment action. Smith

16

v. Ashland, Inc., 250 F.3d 1167, 1174 (8th Cir. 2001). Put another way, simply taking FMLA leave does not prevent an employer from taking adverse action against an employee justified by other work-related conduct. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001).

Plaintiff also finds no purchase in his own testimony that Ms. Woerner and Ms. Rozzelle complained about plaintiff wanting to transfer and were betting that he would resign. Pl. Dep. 289:7-16. While such may be evidence that they did not like working with him, it is not evidence of FMLA-based animus as the alleged comments occurred in September 2009, which is before he mentioned in October 2009 an upcoming need for FMLA leave. Rozzelle Decl. ¶38.

Finally, there appears to be no causal link between the comment of Mr. Martin (discussed above) concerning "keeping the heat on" plaintiff to provide medical records justifying his need to work from home, which he made in May 2010. Plaintiff's FMLA leave had ended months earlier. Instead, such comment appears to concern plaintiff's continued requests to work from home, which by May 2010 lacked medical justification.

Most importantly, plaintiff has not shown that his taking of FMLA leave was the "but-for" cause of any adverse employment action, especially the "Partially Meets" expectations rating he received. This claim will be dismissed.

### D. Defendants' Motion for Sanctions

Defendants ask the court to impose the sanction of dismissing plaintiff's case due to the wiping of the hard drive before the computer was returned to defendants on August 24, 2010. In response, plaintiff argues that there is no proof that it was he that wiped the hard drive and that it could have well been defendants or there counsel inasmuch as more than 90 days elapsed between his return of the computer and sending such computer out for forensic review. Defendants reply that such computer was secured in a paralegal's office in the interim and that

there would be no motive for defendants to wipe the hard drive. Generally, the Federal Rules of Civil Procedure provide that

> [a]bsent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system.

Fed.R.Civ.P. 37(e). Defendants contention is, however, that despite receiving litigation hold letters informing plaintiff of the necessity of maintaining data, and despite defendants' policy concerning such retention of which plaintiff was aware, he intentionally wiped clean his hard drive before returning the computer to defendants. While the court is aware that plaintiff would have had the motivation, opportunity, and skill to thoroughly erase the laptop before returning it, the court cannot say with any degree of certainty that plaintiff in fact did so. Rather, the court would need to conduct an evidentiary hearing at which everyone in the chain of custody of such computer testified and consider the credibility of such testimony.

As this action is not viable on its merits, the court finds that conducting such a hearing would be an exercise in futility at this point. Instead, the court believes that dismissal as a sanction is not appropriate, but that in the event this action does go to trial, the appropriate sanction would be a spoliation instruction if the in-court testimony concerning the laptop is sufficient to raise an inference of tampering with the evidence. The court will, therefore, deny the Motion for Sanctions without prejudice.

## ORDER

**IT IS, THEREFORE, ORDERED** that defendants' Motion for Summary Judgment (#57) is **GRANTED** and this action is **DISMISSED** with prejudice. Defendant's Motion for Sanctions (#60) is **DENIED** without prejudice.

The Clerk of Court is instructed to enter Judgment dismissing this action with prejudice.

Signed: November 15, 2013

Max O. Cogburn Jr.
United States District Judge